This was a suit in equity in the Circuit court of Dinwiddie by Thomas E. Clarke against Thomas Hardgrove and others. In his bill he charged that he in September 1839, bought of Thomas Hardgrove of the city of Richmond a tract of land containing eleven hundred and seventy-six acres, lying in the county of Dinwiddie, at the price of 11,000 dollars; and that Hardgrove had conveyed the land to him by a deed with general warranty. That in the same year the plaintiff had sold a tract of land in Nottoway to Samuel Scott for 10,000 dollars, for which he had received Scott's three bonds of 3333 dollars 33 cents, with good security; which bonds he assigned to Hardgrove in part payment of the land bought of him; and that the last of these bonds remained unpaid. That when he purchased and received the deed for the land, *Page 400 
he had not the slightest suspicion that there was any defect in the title to any part of it. That he has been informed, and has no doubt of the fact, that neither Hardgrove or his vendor ever had any title to a part of the land containing about fifty-one acres. That this fifty-one acres was owned by P. Goodwin, who died about twenty years since, and who devised it to his two daughters, one of whom was married to Thomas Whitworth, and the other had married Daniel E. Allen, and died leaving an infant daughter. And that the legal title to this land was then in this infant and Mrs. Whitworth. That Hardgrove was probably in at least doubtful circumstances.
The plaintiff stated further, that this fifty-one acres of land were situated in the middle of his tract, and in front of his dwelling house, about one hundred and fifty yards from the door: And he stated other circumstances which enhanced its value; so that the whole of the bond of Scott which remained unpaid would be not more than sufficient to compensate the plaintiff for the loss of the land. And having made Hardgrove, Allen and his infant daughter, Whitworth and his wife, and Scott and his sureties, and others, parties defendants, he asked that the payment to Hardgrove of this last bond of Scott might be enjoined. That a commissioner might be directed to enquire and report as to the alleged defects of the title to said land; and if they existed the Court would require the title to be made good if possible; and if that was impossible, that full relief might be afforded him by decreeing payment to him of the amount of Scott's last bond, and such other sum as should be sufficient to compensate him for the loss of the land. And he asked for general relief.
The injunction was granted according to the prayer of the bill: and the cause was so proceeded in that the bill was taken for confessed as to all the before mentioned parties; and one of the commissioners of the *Page 401 
Court was directed to examine and report as to the title to the fifty-one acres of land, and also as to the value of the land the title to which he should consider defective; embracing in such valuation and report the inconveniences, loss of buildings and damages which might be sustained by the plaintiff if he should be deprived of the said land.
The commissioner reported that the title to the fifty-one acres was clearly defective; and he gave the location of it very much as it is described in the bill. For the injury which the plaintiff would, sustain by the loss of this land he referred to the testimony of several witnesses whose examinations were returned with the report. These witnesses agreed in estimating the plaintiff's damages by the loss of the fifty-one acres of land at 2500 dollars.
After the commissioner had returned his report the defendant Hardgrove filed his answer. He objected that the case stated in the bill was not proper for the jurisdiction of a Court of equity; and asked that he might have the benefit of this objection as if it had been formally pleaded. He said that he had purchased the land sold by him to the plaintiff, through the agency of his brother-in-law R. C. Pollard; and knew nothing himself of either the land or the title to it; but relied upon said Pollard who lived near to the land, and who informed him that the title was good. That changing his purpose to remove to the country, he sold the land again through the agency of Pollard. That never whilst he held the land, and indeed not until very lately, had he known or heard of any defect in the title to the fifty-one acres of land mentioned in the bill; but if there was any defect in the title he was willing to do what might be deemed by the Court right in the matter: He was ready and willing to buy the land if it could be bought, and convey it to the complainant; *Page 402 
and if it was so situated that it could not be sold, he was willing to pay a full equivalent to the complainant for it; but he objected strongly that the claim of the complainant as to the amount of the damages sustained by him, was exorbitant and most unreasonable.
It appeared from the testimony of Thomas Whitworth, one of the defendants, that the fifty-one acres of land mentioned in the bill, had been devised by P. Goodwin to his two daughters, of whom Mrs. Whitworth was one; and had been sold by the defendant Allen to Edward O. Branch the vendor of Hardgrove, for 600 dollars. That the sale was sanctioned by Whitworth who had joined in a deed with Allen conveying their interest in the land. That since this controversy commenced he had executed and delivered to Mr. Hardgrove's counsel a legal title to one moiety of the fifty-one acres; and that the legal title to the other moiety was in the infant daughter of Allen.
The plaintiff in 1844 filed an amended bill claiming compensation for an injury which he alleged was done to his land by the Upper Appomattox company under a contract between that company and Hardgrove, entered into whilst Hardgrove was the owner of the land. But it is unnecessary to state the questions arising on that amended bill. The cause came on to be finally heard in September 1845, when the Court dismissed the bill and amended bill with costs: Whereupon Clarke applied to one of the Judges of this Court for an appeal, which was allowed.
The Court is of opinion, that as the appellant has clearly shewn that at the institution of his suit the title to a portion of the land conveyed to him was defective, he had a right, notwithstanding a deed with general warranty had been made, to enjoin the collection of the purchase money;Koger v. Kane, 5 Leigh 606, and cases there cited; and that such right is not impaired though the vendor is seeking to collect the purchase money, not directly from the purchaser, but from a third person on a collateral security assigned to him by the purchaser: It not being incumbent upon the purchaser, in case of such clear defect of title, to risk the hazard of the vendor's solvency.
The Court is therefore of opinion, that said Court erred in dismissing the bill and amended bill of the plaintiff.
Decree reversed with costs, injunction reinstated, and cause remanded with instructions to enter a decree that unless the appellee shall within a reasonable time to be prescribed by the Court, perfect the title to so much of the land conveyed as is shewn to be defective, that an account be directed to ascertain the relative value of the part, or the interest therein, to which the appellee cannot make a good title, and for further proceedings in order to a final decree. *Page 408